Mr. Spilkey, good morning. Good morning, your honors. Ezra Spilkey for Tawana Hilliard. May it please the court. The only reason the government prosecuted Tawana Hilliard was for the content of videos that she helped post on YouTube. Now Mr. Spilkey, you make quite a few arguments in your papers and some of them are more developed than others. Which would you say is your strongest argument? Well, there are two groups of counts. There's the retaliatory retaliation counts and the obstruction counts as well as a sentencing argument. I think that the sentencing argument is a slam dunk. So why don't you explain that? There was a eight level enhancement applied by the district court at sentencing over objection that raised the top of the guidelines from 27 months, raised the range from 21 to 27 months without the enhancement to 51 to 63 months with the enhancement. The enhancement was for making threats. So this is 2J1.2B1B. If the offense involved causing or threatening to cause physical injury to a person or property damage in order to obstruct the administration of justice increased by eight levels. First of all, a threat needs to be communicated. That's clear Supreme Court precedent. Alanis, counterman, it's also plain language. A threat is a communicated intent to do violence. It's a saying to somebody, do this or I will do violence to you. We don't have anything close to that. In fact, the district court said basically that it was the context around the videos that was the threat. We don't even know whether the videos were intended to be seen by the people who were supposed to have been threatened. So that is very easy. Why does it have to be seen by the, why can't it be generalized as opposed to specifically targeted to those individuals? Because a threat needs to be communicated to the person. You could have solicitation of a crime, something like that, but the threat needs to be directed to the person. I mean, that's counterman. Are you saying that only speech directed to the intent, only threats directed to the intended victim directly qualify as threats? Absolutely not. No, no, no. But they're, absolutely not. Indirect, I'm not trying to, I'm not trying to make an argument about hanging on some technicality. I mean, in any, in any way, something can be communicated. And in a threat, because it wasn't, if you do this, X will happen. But there are different kinds of threats. That's a conditional threat. If you do X, Y will happen. But you could also just threaten somebody for something they've already done. No? Well, Your Honor, that's not what Elana says. That's not what counterman says. Elana's E-L-O-N-I-S. So only conditional threats are threats? Right. A threat is a conditional statement. It says, if you don't do this, I will do you harm. So you're saying that's the only threat that's recognized under the law as a, as a crime? I struggle to, to, to, to think of another definition. So if I say to someone, I'm going to kill you. Not, if you do X, I'm going to kill you. I'm going to kill you. That's not a threat? Right. That would be a threat. Yes. Okay. So you do concede that threats don't always have to be defined. Right. That's, if, so if you have, but we don't have that here. Well, no, we haven't. Couldn't it be the case that by putting the videos up on YouTube, the threat was, if you go through with snitching, there will be consequences? Well, obviously the, the district court viewed it that way, but that is just not how, that's not how threats are, that's not how threats are defined by the Supreme Court. That's not how threats are defined. Well, explain that to me again. If you go through with snitching, that's a condition, bad things will happen to you. Why isn't that a threat? That would be a threat, but that's not what we have here. The, there's, it's, we'd have the mere posting of a video and there are captions that say five, nine brims member snitching or something like that. Right. But, but meaning including threatening meaning can be implied from context, correct? Threat could be implied from context. There has to be a declaration. There has to be a statement saying that the, that some, some, some violence is going to happen to somebody. You mean some express statement that some violence will happen to you? That could be implied as well, but this is too far removed from, from, from any implication. There's nothing accompanying the video. So you're saying there's a potential factual inference that could lead to that conclusion, but it's too attenuated to, it's so attenuated here that it would be an abuse of discretion to make that finding? That's right, Your Honor. By a preponderance? That's right, Your Honor. And, and I mean, we look at counterman most recently. We look at Alonis. How does, tell me, spell out the counterman argument because it seems to me this is perfectly fine even under counterman. Well, in counterman there was, I believe, harassment and it was directed to the person. The person received the, the, the, the threat. The person received the message. Here this is broadcast to the world. It's put out into the ether. There's no deadline. There's no, there's no, you know, call for violence. There's nothing saying you, you will, violence will be done to you isn't the threat, um, whether it's a threat, how it's viewed by the listener. In other words, if the person who is the intended target of the threat perceives it as a threat and fears, not whether it's actually going to be carried out, but with hashtag snitches, or I'm paraphrasing, for the game when it is known that that is the number one rule, you don't snitch. How is that not a threat? When it's being told to not just the world, but to the members of the game that this person is now snitching? Well, that for taking the first question first, um, there has to be, yes, there has to be a perception. Um, but rather actually what counterman says is there has to be a subjective knowledge on the part of the declarant, on the person, on the part of the person making the purported threat. A subjective knowledge that the statement would be received as threatening, actual violence. And the standard for that, Judge Kagan says, can be no less than recklessness. Isn't there a distinction between the counterman category threat as unprotected speech and speech integral to criminal conduct? It seems to me that distinction eludes you throughout the briefing on a number of issues, including this one. If this is speech integral to criminal conduct, then counterman doesn't tell us anything about that, right? You're right. That's, counterman, uh, the most recent Supreme Court case on solicitation is Hansen. Um, and Hansen, it can be, um, contrasted with rather solicitation cases, speech integral cases can be contrasted with true threats cases, um, or rather incitement cases. I misspoke. Incitement, you need an imminent, you need the, the, the breaking of the law to be imminent. With solicitation, it could be at any point. So for instance, in Hansen, the law there was encouraging someone to break the immigration laws. Uh, another example commonly cited by, uh, the Academy is the anarchist cookbook or something that teaches you how to make pipe bombs or things like that. That can be seen as solicitation. But there you need, for instance, this court and others, uh, have reviewed other obstruction, uh, statutes in the context of protected free speech. And in those cases, they say that, um, and this is United States v. Schulberg, 895 F. 2nd, 882 and 886, 2nd Circuit, 1990. Uh, Velasquez, a 1985 case from the 7th Circuit says something similar. That there has to be a purpose. There has to be an unlawful purpose. And in those cases, the purpose was a corrupt purpose. Corrupt has a, has a definition. It's the specific intent to obstruct justice. So speech integral has to be speech that helps affect another crime. Here, for instance, taking retaliation, um, here taking, for instance, retaliation 1513 E, retaliation is not another crime. Retaliation is actually core speech. Statements of disapproval. If, if, uh, someone punches someone else in the face as a form of retaliation, have they engaged in core speech? Absolutely not. So, but the retaliation is not only core speech. No. It's other things. One can retaliate through speech or through physical means. Absolutely correct. Firing from a job. These are conduct. Absolutely, Your Honor. Absolutely. And by the way, I do want to bring up Holder v. Humanitarian Law Project, which says that even laws, and an issue in that case was the material support statute. Material support of a designated foreign terrorist, uh, organization can be accomplished by a bunch of means, not having to do with speech. But the Supreme Court there said, rejected the government's, uh, stance, which was, hey, this is a law of general applicability, um, that can sometimes be affected through speech. There, the court said, of course, that's true. But this sweeps in a lot of speech. And in that case, there was the people were training, doing advocacy things, um, and, and, and things like that. It was speech. And the court there said strict scrutiny applies. Here, likewise, yes, retaliation can absolutely be accomplished by firing somebody, slashing someone's tires, all kinds of non-speech conduct. Here, there's speech. And when I say that speech that, I meant to say, Judge, I'm sorry, speech that is retaliatory is core, core protected speech. N-H-A-C-P-V-C-L-A-B-O-R-N. No, I think, I think you're, you're deriving this, this theory from cases that say you can't just criminalize speech and then say that the speech is integral to the protected conduct. But we've, I think as we've just discussed, that's not what retaliation is. And therefore, speech that is integral to the retaliatory conduct is unprotected. I would differ with that. And the reason why is I, I, you have to, um, uh, distinguish the, for instance, the, the, the cases where the purpose was corruption, was obstruction, a specific intent to obstruct, that is another crime. That's a crime in and of itself. The speech there was meant to obstruct. Speech that's meant to retaliate does not have the same, it's not the same speech integral, um, kind of, uh, analysis. Because it's not a crime. I mean, the model penal code- You just said that, you, you've heard, retaliation is a crime. So, I mean, you, I think you're just, well, I've, I've made, I've made the, the, the point. You're just moving, I think, from saying where there's, you've eliminated the category of speech integral to a crime by saying there has to be some other crime. Well- Which I think you've derived from the cases, I think you've derived wrongly, I took out my cards on the table so you could dissuade me. Um, but I think you've derived that from the cases that say what you can't do is simply, you can't criminalize protesting and then say that protesting is integral to the crime of protesting. But that's what we have here with retaliation. Retaliation isn't a crime outside of 1513. You can't, that's what Congress has done here. Congress has said you can't retaliate- Well, then we've been around the, the circle on that one. There is retaliation without speech. Absolutely. So the question then, okay. Um, let me ask you one more on, you did, you moved to the- But, I'm sorry, Judge, can I just answer that for one quick second? With the Shroudberg cases that I'm trying to, uh, distinguish- Which case? The Shroudberg case, the, the other, the other fifth, you know, the other obstruction speech cases, the cases that have to do with that intersection between obstruction and speech. Corrupt, a corrupt purpose is necessarily an illegal purpose. It's necessarily, uh, a, uh, a criminal purpose. Necessarily. Retaliation isn't necessarily a criminal purpose. That's the distinguish, the distinction I'm attempting to make. And where do you derive that from? Well, corruption, corruption is, corruption is a specific intent, uh, to obstruct justice. And that's from, uh, for instance, United States v. Sampson, 898 F3rd 287 at 304 2nd Circuit, uh, 2018. It says corrupt intent equals the specific intent to obstruct a federal judicial or grand jury proceeding. And so the, in, in Shroudberg's rationale had to do with the statute, had to do, sorry, with the state of mind that was necessarily criminal. A corrupt state of mind. That's why they said, this isn't protected speech. It's outside of the category of protected speech. It's unprotected because it has a corrupt purpose. And that's why it's not, doesn't come in for, uh, uh, First Amendment scrutiny. All right. Um, if nothing else, Mr. Spilkey, you do have two minutes for rebuttal. Thank you. Thank you, Your Honor. We'll hear from the Governor. Thank you, Your Honors. May it please the court. Nick Moskow for the United States. I also represented the United States below. Mr. Moskow, Mr. Spilkey says that the sentencing argument is a slam dunk. Is that the case? Yes, Your Honor. However, I believe the other team scored the points. In this case, not only is the enhancement applicable, but the court noted in unambiguous language, and this is at 1727 of the record, I would have given this sentence regardless of the applicable advisory guidelines range. So even assuming error, it's harmless. Even assuming error, it's harmless, Your Honor. And there is authority in the circuit for deciding that. There's no authority for deciding that it would not be harmless. Judge Calabresi's opinion in Prestel 941 F. 3rd 44 specifically urges the court not even to get into the merits, should a court make an unambiguous statement like that at sentencing. In this case, the sentencing proceeding lasted for many hours. Judge Chen explained her reasoning at great length, held that the eight-level enhancement probably overstated the extent of the defendant's culpability for the threat and varied downwards, but says she would have given the same sentence because some degree of additional severity was necessary to account for the threat that inherently accompanied what happened. Just with respect briefly to the counterman argument in this space, counterman is obviously not on point for the reasons the court has articulated. Counsel is certainly right that in counterman, the Supreme Court held that a statement is not a threat unless it's at least reckless with respect to the effect that it would have on the listener. The idea in this case that there wasn't the expectation that the listener would receive the videos is simply misplaced. The defendant tagged the victims in the posting of the videos. She specifically cited to their social media accounts. She created an account for the gang and then directed them to the victims in a way that was traceable by the victims. So the idea that the defendant didn't intend for the victims to know about the threatening statements lacks any foundation in the record in this case. With respect to the First Amendment argument, Your Honor is correct. This is a case in which the speech was integral to the criminal conduct. We know that because the jury held that the speech was integral to the criminal conduct. At Government Appendix 243, the district court's jury instructions asked whether or instructed that they should find that it was protected speech unless it was speech that was integral to the criminal conduct in the case. Well, to the extent there is a as-applied challenge, which is essentially I think a sufficiency challenge, the fact that the jury found it is not the end of your answer, I hope. No, Your Honor, that's right. Although it bears noting that there is not in fact a sufficiency challenge and that even in the reply brief, counsel resists the invitation to cast this as a challenge to the jury's finding in this regard. So we would argue that any sufficiency challenge has been waived. Certainly. Where's that in the reply? This is, Your Honor, in footnote, I believe it's footnote four. You'll take it on anyway in case we don't completely waive it. Yes, Your Honor. There was certainly sufficient evidence for the jury to, it might not be footnote four, Your Honor. I'll find the specific. I don't see footnotes. In the reply brief, Your Honor. There certainly are, but we're happy to look for that. In the meantime, Your Honor, there's sufficient evidence for the jury's verdict to have been supported. Certainly, the defendant's creation of a separate gang-related Google and YouTube account named Primetime59brim, every word a reference to the violent gang to which she was directing the video is evidence of her intent to retaliate against the victims rather than to simply disseminate a statement into the universe. The invocation of the gang again in the title of the video coupled with the tagging of the victim at Government Appendix 290. After watching the video, the defendant wrote down the victim's words, quote, they're going to get me if I write statements. And on the next page, in reference to Marcus Laborde, whom Watson identified as Chai Town, she wrote down Watson's words, Chai Town is dangerous. He's going to know I told. I need some type of protection. She then posted the video of him saying those things. She specifically intended to bring about the consequences that Watson predicted. She coordinated with Boom, a gang member, about whom she'd spoken in the context of other gang machinations in Government Exhibit 308. Her reference to Boom is at Government Appendix 314. And her communications with Boom at Government Exhibit 1065 discussed in the government's brief were admitted at trial. And that's at page A909 of the appendix. The defendant, sorry, cooperating witness, Jesse Hoyt, testified that he was shot for cooperating. That's at A778. Co-conspirators referred to the posting of the videos as, quote, ammunition against the witnesses. That's at Government Exhibit 434, right into the record at 1323 in the appendix. The defendant called gang members to disseminate the video. That's at 314 of the Government Appendix 308. Rather than calling the New York Times, she called the 59 Brims. At Government Appendix 310, the defendant referred to Watson as, quote, disgusting, but then indicated she didn't want to talk about it more over the phone because she, quote, don't even want to try to speak, you know, cryptically in a code, noting, quote, I don't have time for no coding crap. The reason she was trying to speak cryptically and in a code is because she knew that what she was doing was designed to harm Watson, to harm Robinson. The, in Jaboni, which is the Supreme Court's permanent case on speech integral, as the court knows on conduct integral, in that case, the protected activity was picketing, which is frequently cited in the defendant's briefing here. The picketing is certainly protected by the First Amendment, but in that case, it was designed to elicit entering into an illegal agreement in restraint of trade. There, the fact that the restraint on trade was accomplished through protected First Amendment activity. So I guess Mr. Spilkey's argument is some version of, well, if Congress had criminalized picketing, then you can't use picketing conduct as speech integral to the commission of a crime. And he says retaliation is like picketing. And so what you've done is you've shifted by invoking another statute that the speech was integral, another crime that speech was integral to the conduct, as opposed to the retaliation here, which he says is just speech itself. That's right, Your Honor. I think Your Honor's example of punching someone clearly puts this on the Jaboni side of the ledger, rather than on the Stolen Valor Act side of the ledger. The Supreme Court in Alvarez held that that statute was prohibited falsely claiming to have received certain honors, strictly regulated speech. A statute like that would be. And so the question is, does the criminal conduct only criminalize speech? Or other protected First Amendment activity. That's right, Your Honor. And in this case, it's a broad swath of activities which can be accomplished through speech or through other means. We would analogize to Section 241, conspiracy to violate someone's constitutional rights, which can be accomplished through speech or through myriad other means. There's ample authority, Your Honors, for the idea that this statute can be violated through speech. It's not clear in this case that it was violated through speech. There was certainly some expressive activity, but there was also other activity. But the jury's verdict, holding that to the extent they were relying on expressive conduct, that expressive conduct was integral to the crime, was certainly supported by sufficient evidence. I mean, the video is speech. The question of whether it's protected speech or not is the question we've been discussing. But is that what you mean? You mean the video might not be speech or? Posting a video to YouTube can be protected activity, certainly, Your Honor, in some contexts. Here, the specific intent to do so in retaliation for someone making a truthful statement to law enforcement officers in relation to the commission or possible commission of a federal crime takes it out of the First Amendment bucket. But it is otherwise protectable activity. Could I ask you, we didn't discuss it with Mr. Spilkey, but obstruction of a federal proceeding, the knowledge requirement question here. Yes, Your Honor. So there's two things. First, with respect to the, I believe defendant challenges the jury instructions and the sufficiency of the evidence. With respect to the jury instructions, it's an unpreserved challenge insofar as the objection in the district court was to the need for the knowledge to have been that it was federal as opposed to a state proceeding. There was certainly no plain error or obvious error. Yeah, you can live to sufficiency. On sufficiency, the defendant knew that there was an ongoing investigation that greatly exceeded the scope of the Sullivan County investigation. She knew that in part because the videos that she posted, that she saw, included a federal officer who'd driven up and was present at the post-arrest statements of both Watson and Brown. Trying to reconcile it with a lot of cases, including I think the Supreme Court case, the name alludes me. Aguilar, Your Honor. Thank you. Where the interview by the, I mean, you know you're being interviewed by an FBI agent, but that's insufficient. Help me reconcile that. Yes, Your Honor. Aguilar doesn't hold that that's insufficient to be aware that there is an investigation of some kind, but is specific to the nexus requirement and says that the statement made to the FBI agents wasn't something that was known to be material to any ongoing grand jury investigation. In contrast, in cases like Binday, 804 F3rd at 590 to 91, this court in 2015 rejected the precise arguments being made by the defendant here, said that the existence of an FBI investigation there in the absence of a sort of multi-tiered problem like we had in Aguilar led to the likelihood of a grand jury being convened, and it's a reasonable foreseeable question. There, because there wasn't a question as to whether the particular statements at issue would have been within the scope of the foreseeable grand jury investigation, the nexus requirement from Aguilar wasn't at issue. The same is true here. There's no question that the investigation of which the defendant was aware of a likelihood, the federal investigation into racketeering and Hobbs Act robbery is certainly something that she knew that Watson's statement was material to because he described in detail the activities of the 59 Brims and the many robberies that he, Laborde, and others committed. It also includes, in this case, the defendant's awareness that some of the people mentioned by Watson had been arrested. So Watson talked about Laborde, who was also known as Chitown, and then in Government Exhibit 1042, Hilliard was informed that he had been arrested, and, quote, not your regular blue boys had arrested Laborde. The idea that the arrest of a co-conspirator could somehow still leave someone in the dark as to the possibility of a grand jury investigation was soundly rejected by this court in Martinez in 2017, where the arrests of co-conspirators made it reasonably foreseeable that there would be a grand jury investigation into the conduct at issue. So this case has no issue with nexus because, again, the conduct was specifically designed to impede the ongoing investigations, and the awareness of the ongoing investigation included an awareness of charges, included an awareness of the criminal activity that exceeded the scope of the Sullivan County investigation. Her awareness that the investigation exceeded the scope of the Sullivan County investigation is also proven in notes that she'd taken in her home. Government Exhibit 260, again, included notes, and this is at Government Appendix 288, in which the- The structure of the gang? Your Honor, that was separately found in her house, and that goes to other elements. But here, she wrote down the number for Brooklyn Defender Services, which shows her awareness of the likelihood that charges beyond the robbery charges in Sullivan County would be brought. So the defendant's awareness of the likelihood of an additional investigation, additional charges, additional grand jury investigation is certainly stronger than existed or Martinez or Binday. The defendant, it also goes without saying, was a paralegal in the U.S. Attorney's Office and was aware of the general structure of these matters. So certainly, there was ample evidence to support the jury's finding. The defendant was aware that there was a reasonable likelihood that there would be a grand jury investigation. And on obstruction, it shouldn't be long now, but is there any scenario in which we need to wait for the Supreme Court's decision in Fisher? No, Your Honor. The existence of a federal grand jury investigation is sufficient to satisfy the official proceeding requirement here. Her knowledge of the reasonable likelihood of that is going to be satisfied. Certainly, the Supreme Court sometimes surprises us, and as Your Honor's noted, it should be a couple of weeks. So we wouldn't object should the court choose to wait just to make sure there's no surprises in there. But I don't expect that the holding in that case will affect the analysis of the sufficiency. Limited it to tampering with evidence, for example. Yes, Your Honor, and whether it has to be documents or other things. Should they restrict the scope in that regard? It could have an effect. It's documentary evidence, right? Yes, Your Honor. That would have an impact. It's an unpreserved challenge, Your Honor. So certainly, it wouldn't have an impact on the analysis of the claims that are before the court right now. Okay. Thank you. Thank you, Your Honor. Mr. Schulte, you have two minutes. Yes, Your Honor. I'm just picking up at the obstruction questions. We would certainly supplement our briefing on Fisher should the court request. But as far as not citing any cases about the knowledge requirement, pages 48 to 49 of our opening brief, we talk about Arthur Anderson v. United States, 544 U.S. 696, 2005, where the court reasoned that a person cannot act corruptly under 1512 when he does not have in contemplation any particular official proceeding. The government cited the fact that this person on the board was referenced in a very lengthy post-arrest statement and averred without any support that the arrest of a co-conspirator can show that there's a federal proceeding going on. There's no evidence that Laborde's a co-conspirator with Ms. Hilliard or Tyquan Hilliard, her son. The fact that she wrote down Brooklyn Defender Services is not supportive at all. Brooklyn Defender Services does not represent federal clients. She would know that. She's a 10-year paralegal for the United States Attorney's Office. So that's just not supportive at all. On the sentencing enhancement, I don't think you addressed the harmless discernment. I haven't in... Yeah, no, you did in your papers. In the papers, right. So if 33 months was acceptable, even without the enhancement, the judge made no findings, no specific findings. She just said it. She just said, and by the way, she said the magic words. That cannot be sufficient. There needs to be specific findings for going above the guidelines range by six months for somebody who's... It's her first offense. She's a grandmother, et cetera, et cetera. What's the best case for that proposition? Um, can I get that to you, judge? Can I write afterwards? I don't have it in front of me. Okay, by the end of the day, you can put in a letter. Yes, Your Honor. I'll put in a letter for that. But either way, you need... There's no special findings were made. You can't say the magic words and just say, I would have given this sentence anyway. It's six months over the top of the guidelines at a time when the sentencing commission is saying, first-time offenders, zero-point offenders, you really should consider no jail. So for that reason, I don't think it's harmless. Yes. And just to clarify it. So by the end of the day, a letter just... I don't think we need additional argument, just citation to the best case for the proposition that where the judge has said, this is even if I didn't apply the enhancement, this is what I would conclude. I think what you said was, you have to make findings that would show that she would have exceeded the top of the guideline range under the alternative theory of the guidelines. So I'm looking for a case in support of that proposition. Right. Yes, Your Honor. And by the end of the day. Thank you so much.  Thank you, counsel. Appreciate the arguments and briefing. Turn to our...